

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | |
| v. | ) | Violation: Title 15, United |
| | ) | States Code, Section 645(a), |
| WILLIAM FREDERICK REED | ) | Title 18, United States Code, |
| | ) | Sections 152(3) and 152(8), and |
| | ) | Title 26, United States Code, |
| | ) | Sections 7203 and 7206(1) |

1:25-cr-00213
Judge Manish S. Shah
Magistrate Judge Keri L. Holleb Hotaling
RANDOM / CAT.3

## COUNT ONE

The SPECIAL NOVEMBER 2023 GRAND JURY charges:

1. At times material to this indictment:

    a. Defendant WILLIAM FREDERICK REED resided in Hazel Crest, Illinois, was employed as a police officer by the Village of Robbins and the Village of Dolton, was self-employed as an independent contractor/sole proprietor providing security services, and had control and signature authority over multiple bank accounts, including US Bank account #9934 (the "US Bank Account"); National Police Credit Union account #81298 (the "National Police Credit Union Account"); National Bank of Kansas City account #2343 (the "National Bank of Kansas City Account") and Chime account #0710 which was administered by The Bancorp Bank (the Chime Account).

Paycheck Protection Program Loans

    b. The United States Small Business Administration ("SBA") was an agency of the United States government that provided economic support to small

businesses, including by guaranteeing loans provided to small businesses by private lenders.

        c.        The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

        d.        One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

        e.        To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business. The PPP loan application required the applicants to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual for a PPP loan. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, the number of employees employed by the business and the average monthly payroll or gross income. These figures were used to calculate the applicant's eligibility and the amount of money that the business could receive as part of a PPP loan. Applicants were also required to make good faith certifications, including that the business entity was in operation on February 15, 2020, and economic uncertainties had necessitated their loan requests for continued business operations.

      f.      The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA.

      g.      To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to lenders participating in the PPP, and received the loans directly from those lenders. The SBA used information provided by the applicant to the lender to determine whether to guarantee and forgive the loan.

      h.      Kabbage, Inc., ReadyCap Lending, LLC, and Cross River Bank were lenders that participated directly in the PPP to whom applicants for PPP loans could submit information for the purpose of receiving a loan that could be guaranteed or forgiven by the SBA.

    2.    On or about March 27, 2020, REED filed with the Internal Revenue Service a Form 1040, Individual Income Tax Return for 2019, along with a Schedule C, Profit or Loss from Business, which reported that REED received gross receipts of $1,304 and had a net loss of $16,656 from the operation of his "Off Duty Security" business in 2019. Based upon the information in the 2019 Schedule C filed by REED with the IRS on March 27, 2020, REED would not have qualified for a PPP Loan.

    3.    On or about June 22, 2020, REED submitted an application to Kabbage, Inc., in which REED falsely represented that he was qualified to receive a PPP loan in the requested amount of $5,862 based on inflated and falsified average monthly payroll and which application included a Schedule C, Profit or Loss From Business, for 2019 (the "Fraudulent 2019 Schedule C"), which falsely represented gross receipts of $29,456 and a net profit of $28,142 from the operation of his "Off Duty Security"

business in 2019, when REED knew that the Fraudulent 2019 Schedule C inflated both gross receipts and net profit.

    4.    On or about June 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

WILLIAM FREDERICK REED,

defendant herein, knowingly made a false statement to Kabbage, Inc. for the purpose of influencing the actions of the SBA in guaranteeing and forgiving a PPP loan to REED, in that REED falsely represented that he qualified for a PPP loan in the requested amount of $5,862;

In violation of Title 15, United States Code, Section 645(a).

**COUNT TWO**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Paragraphs 1 and 2 of Count One are re-alleged here.

2. On or about January 29, 2021, REED submitted an application to ReadyCap Lending LLC, in which REED falsely represented that he was qualified to receive a PPP loan in the requested amount of $5,800 based on inflated and falsified average monthly payroll and which application included the Fraudulent 2019 Schedule C, when REED knew that the Fraudulent 2019 Schedule C inflated both gross receipts and net profit.

3. On or about January 29, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

WILLIAM FREDERICK REED,

defendant herein, knowingly made a false statement to ReadyCap Lending LLC for the purpose of influencing the actions of the SBA in guarantee and forgiving a PPP loan to REED, in that REED falsely represented that he qualified for a PPP loan in the requested amount of $5,800;

In violation of Title 15, United States Code, Section 645(a).

**COUNT THREE**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Paragraphs 1 and 2 of Count One are re-alleged here.

2. On or about February 27, 2021, REED submitted an application to Cross River Bank, in which REED falsely represented that he was qualified to receive a PPP loan in the requested amount of $5,862 based on inflated and falsified average monthly payroll and which application included the Fraudulent 2019 Schedule C, when REED knew that the Fraudulent 2019 Schedule C inflated both gross receipts and net profit.

3. On or about February 27, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

WILLIAM FREDERICK REED,

defendant herein, knowingly made a false statement to Cross River Bank, for the purpose of influencing the actions of the SBA in guarantee and forgiving a PPP loan to REED, in that REED falsely represented that he qualified for a PPP loan in the requested amount of $5,862;

In violation of Title 15, United States Code, Section 645(a).

## COUNT FOUR

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Subparagraph 1(a) of Count One is re-alleged here.

2. On or about February 20, 2022, at Hazel Crest, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, willfully made and subscribed a United States Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2021, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated:

a) On line 1, that defendant's wages, salaries, and tips were $22,286; on line 8, that defendant's other income was $27,453; and, on line 9, that defendant's total income was $49,739, when defendant knew that his wages, salaries, and tips, other income, and total income substantially exceeded the amounts reported on the return; and

b) On line 25(b) that defendant had $3,740 in federal income tax withheld from Forms 1099, when defendant knew that he had $0 in federal income tax withheld from Forms 1099;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FIVE

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. At times material to this count:

    a. Paragraphs 1 and 2 of Count One are re-alleged here.

    <u>Chapter 7 Bankruptcy Proceedings</u>

    b. Chapter 7 of Title 11, United States Code, provided individuals who were unable to pay their debts with an opportunity to obtain a fresh financial start through the discharge of pre-existing debts.

    c. In order to initiate a Chapter 7 bankruptcy case, an individual, known as the "debtor," was required to file a bankruptcy petition with the United States Bankruptcy Court.

    d. The filing of a Chapter 7 bankruptcy petition automatically stayed collection activity by creditors against the debtor and created a bankruptcy estate comprised of all legal or equitable interests of the debtor in property including property acquired by the debtor as of the commencement of the case.

    e. In addition to the bankruptcy petition, a debtor was required to file certain documents with the United States Bankruptcy Court that detailed the debtor's financial condition, known as Schedules and a Statement of Financial Affairs. The debtor was required to sign a statement under penalty of perjury that the Schedules and Statement of Financial Affairs were true and correct before filing them with the United States Bankruptcy Court.

    f. With respect to the Schedules, the debtor was required to disclose his current financial circumstances and sign a statement under penalty of perjury

that the Schedules were true and correct before filing them with the United States Bankruptcy Court. The information the debtor was required to provide in the Schedules included that:

    i.    Schedule A/B required the debtor to disclose whether there were tax refunds owing to him, and, if so, to provide specific information about the refunds, including the amounts of the refunds and whether the debtor had already filed the returns and the tax years; and

    ii.    Schedule E/F required the debtor to disclose unsecured creditors.

    g.    With respect to the Statement of Financial Affairs, the debtor was required to disclose his financial history, including:

    i.    Whether, in addition to income from employment and operating a business, he had any other income in the year of filing or the two previous years; and

    ii.    Whether, within 1 year before he filed bankruptcy, any financial accounts held in his name, or for his benefit, were closed, moved, or transferred.

    h.    The United States Trustee was responsible for ensuring the integrity of the bankruptcy system, and for promoting compliance with the bankruptcy laws and rules applicable to bankruptcy proceedings. To this end, the United States Trustee appointed and oversaw the activities of a trustee (the "Chapter 7 Trustee"), who was responsible for administering individual Chapter 7 bankruptcy cases for the benefit of the debtor's creditors.

i. A debtor was required to appear at a meeting of creditors (known as a "341 Meeting") and to testify under oath concerning his financial affairs.

j. Prior to the 341 Meeting, a debtor was required to provide the Chapter 7 Trustee with a copy of the debtor's federal income tax return filed with the Internal Revenue Service for the most recent tax year prior to the commencement of the case.

k. The information provided in Schedules and the Statement of Financial Affairs was material to a determination by the United States Trustee, the Chapter 7 Trustee, and creditors whether the debtor had properly filed a Chapter 7 bankruptcy petition and whether the United States Trustee, Chapter 7 Trustee or creditors should object to the discharge of his debts or move to dismiss the bankruptcy case.

2. Beginning in or around June 22, 2020, and continuing until in or around July 22, 2022, at Chicago and Hazel Crest, in the Northern District of Illinois, Eastern Division, and elsewhere,

WILLIAM FREDERICK REED,

defendant herein, devised and intended to devise a scheme to defraud, and for the purpose of executing and concealing the scheme and attempting to do so, filed and caused to be filed documents in a bankruptcy case under Title 11 of the United States Code.

3. It was part of the scheme that, on or about June 22, 2020, REED submitted a fraudulent application to Kabbage, Inc., for a $5,862 PPP loan in which he made false representations, including through the Fraudulent 2019 Schedule C.

4. It was further part of the scheme that, on or about June 24, 2020, REED fraudulently caused Kabbage, Inc., to directly deposit $5,862 in proceeds of PPP loan #7902 into the National Bank of Kansas City Account.

5. It was further part of the scheme that, on or about January 29, 2021, REED submitted a fraudulent application to ReadyCap Lending, LLC, Inc., for a $5,800 PPP loan in which he made false representations, including through the Fraudulent 2019 Schedule C.

6. It was further part of the scheme that, on or about February 27, 2021, REED submitted a fraudulent application to Cross River Bank for a $5,862 PPP loan in which he made false representations, including through the Fraudulent 2019 Schedule C.

7. It was further part of the scheme that, on or about March 1, 2021, REED fraudulently caused Cross River Bank to directly deposit $5,862 in proceeds of PPP loan #8506 into the Chime Account.

8. It was further part of the scheme that, on or about May 6, 2021, REED fraudulently caused ReadyCap Lending, LLC, to directly deposit $5,860 in proceeds of PPP loan #8900 into the US Bank Account.

9. It was further part of the scheme that, on or about February 9, 2022, REED fraudulently caused the SBA to forgive the $5,862 Kabbage, Inc. PPP loan #7902 and the $5,862 Cross River Bank PPP loan #8506, in part, through submission of the Fraudulent 2019 Schedule C.

10. It was further part of the scheme that, on or about February 20, 2022, REED knowingly filed a fraudulent 2021 Form 1040 United States Individual Income

Tax Return, in which defendant intentionally under-reported his income and inflated his withholdings as further described in Count Four above, and which represented that defendant had over-paid his income taxes and was entitled to a refund.

11. It was further part of the scheme that, on or about March 4, 2022, REED filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois, thereby initiating a Chapter 7 bankruptcy case captioned *In re William Reed*, No. 22-02502 (the "*Reed* Bankruptcy Case"), in which REED made false statements and provided false documents to conceal his receipt of PPP loan proceeds and submitted the fraudulent 2021 Form 1040 to cause the United States Trustee, the Chapter 7 Trustee and his creditors not to inquire further into his financial affairs.

12. It was further a part of the scheme that, on or about March 4, 2022, REED filed schedules in the *Reed* Bankruptcy Case that were fraudulent including in that:

> a. REED falsely represented in Schedule A/B that there were no tax refunds owing to him, when REED's fraudulent 2021 Form 1040 had caused a refund to be owed to him: and
>
> b. REED intentionally did not disclose in Schedule E/F ReadyCap Lending, LLC and PPP loan #8900 in the amount of $5,860.

13. It was further a part of the scheme that, on or about March 4, 2022, REED filed a Statement of Financial Affairs in the *Reed* Bankruptcy Case that was fraudulent including in that:

> a. REED intentionally did not disclose as "other income" in 2022 the $5,862 in proceeds of the forgiven Kabbage, Inc., PPP loan #7902 and the $5,862 in proceeds of the forgiven Cross River Bank, PPP loan #8506; and

    b. REED falsely represented that there were no financial accounts in his name closed within a year of filing bankruptcy, when he knew that that he had at least two accounts closed within a year of his filing bankruptcy, including the US Bank Account into which the $5,860 proceeds of the ReadyCap Lending, LLC, PPP loan #8900 had been deposited, and the National Police Credit Union.

14. It was further part of the scheme that, on or about April 5, 2022, REED fraudulently provided the Chapter 7 Bankruptcy Trustee with a purported copy of his 2021 Form 1040 Individual Income Tax Return, which defendant had further falsified by altering it to remove the false withholdings from Forms 1099 and to represent that defendant owed income tax, instead of having overpaid and being owed a refund.

15. On or about March 4, 2022, at Chicago, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, for the purpose of executing and concealing the above-described scheme and attempting to do so, filed and caused to be filed a document, namely, Schedules and a Statement of Financial Affairs in a proceeding under Title 11, namely, a Chapter 7 bankruptcy case, *In re William Reed*, No. 22-02502;

In violation of Title 18, United States Code, Section 157(2).

**COUNT SIX**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Paragraph 1 of Count Five is realleged here.

2. On or about March 4, 2022, at Chicago, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, knowingly and fraudulently made and caused to be made a materially false statement under penalty of perjury in relation to a case under Title 11, namely, a Chapter 7 bankruptcy case, *In re William Reed*, No. 22-02502 in that:

    a. in response to question 28 of Schedule A/B concerning "tax refunds owed to you," REED falsely represented that he had no tax refunds owed to him, when REED knew that as a result of the fraudulent 2021 Form 1040 that he had filed with the IRS, as charged in Count Four, that he had a tax refund owing to him;

    b. in response to question 3 of Schedule E/F, requiring REED to list all of his non-priority unsecured claims, REED intentionally did not list ReadyCap Lending, LLC, and PPP Loan #8900 in the amount of $5,860;

    c. in response to question 5 of the Statement of Financial Affairs which required REED to disclose income, in addition to income from employment and operating a business, in the year of filing and the two previous years; REED intentionally did not disclose as "other income" in 2022 the $5,862 in proceeds of the forgiven Kabbage, Inc., PPP loan #7902 and the $5,862 in proceeds of the forgiven Cross River Bank, PPP loan #8506; and

    d. in response to question 20 of the Statement of Financial Affairs which asked whether "within 1 year before you filed bankruptcy, were any financial accounts . . . held in your name, or for your benefit, closed, moved, or transferred," defendant falsely answered no, when REED knew that he had at least two accounts closed within a year of his filing bankruptcy, including the US Bank Account into which the $5,860 in proceeds of the ReadyCap

14

Lending, PPP loan #8900 had been deposited, and the National Police Credit Union Account;

In violation of Title 18, United States Code, Section 152(3).

**COUNT SEVEN**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Paragraph 1 of Count Five is realleged here.

2. On or about April 5, 2022, REED provided to the Chapter 7 Trustee what REED falsely represented to be a copy of his 2021 Form 1040 Individual Income Tax Return.

3. On or about April 5, 2022, at Chicago and Hazel Crest, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, after the filing of a case under Title 11, namely, a Chapter 7 bankruptcy case captioned *In re William Reed*, No. 22-02502, knowingly and fraudulently falsified and made false entries in recorded information relating to the financial affairs of debtor WILLIAM REED, in that REED falsified for the purpose of providing to the Chapter 7 Trustee and the United States Trustee a purported copy of his 2021 Form 1040 Individual Income Tax Return, which was materially false in that it was not a copy of the tax return that REED had filed with the IRS, as REED had altered the tax return by removing the false representation that REED had withholdings from Forms 1099 and causing the tax return to represent that REED had tax due and owing, instead of REED having overpaid and being owed a refund;

In violation of Title 18, United States Code, Section 152(8).

**COUNT EIGHT**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Subparagraph 1(a) of Count One is re-alleged here.

2. Beginning on or about January 1, 2022, and continuing through on or about December 31, 2022, at Hazel Crest, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, had and received gross income of approximately $101,953, including from his employment as a police officer for the Villages of Robbins and Dolton. By reason of such gross income, defendant was required by law, following the close of the calendar year 2022 and on or before April 18, 2023, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing the foregoing, defendant did willfully fail, on or about April 18, 2023, in the Northern District of Illinois, and elsewhere, to make an income tax return;

In violation of Title 26, United States Code, Section 7203.

## COUNT NINE

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1. Subparagraph 1(a) of Count One is re-alleged here.

2. Beginning on or about January 1, 2023, and continuing through on or about December 31, 2023, at Hazel Crest, in the Northern District of Illinois, Eastern Division,

WILLIAM FREDERICK REED,

defendant herein, had and received gross income of approximately $189,092 including from his employment as a police officer by the Village of Dolton. By reason of such gross income, defendant was required by law, following the close of the calendar year 2023 and on or before April 15, 2024, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing the foregoing, defendant did willfully fail, on or about April 15, 2024, in the Northern District of Illinois, and elsewhere, to make an income tax return;

In violation of Title 26, United States Code, Section 7203.

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Sarah Streicker on behalf of
ANDREW S. BOUTROS
United States Attorney